The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Well, good morning everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. We have four cases on for argument this morning. The first is 24-1970, Stanley v. Bocock. Someone will correct me if I butchered that. Mr. Grimes? Yes, Your Honor. May it please the Court, and it is Bocock, Your Honor, that that is correct. The issue in this case is whether the probable cause finding in the search warrants is a bar as a matter of law to the retaliatory search warrant claim. The answer under Gonzales and the Nieves carve out is it is not. There are four reasons why the district court decision must be reversed. First, under Gonzales, if it was not clear before, it's clear now, that probable cause is not a silver bullet to these First Amendment retaliatory claims. There is no requirement, particularly when objective evidence exists, to plead and prove an absence of probable cause. And for this reason alone, the district court's decision must be reversed. Objective evidence is the only requirement for retaliatory claims. And here we have clear objective evidence. I also commend to you, and I filed a notice of supplemental authority yesterday, Judge Ho's dissenting opinion in the Fifth Circuit's decision denying the petition for rehearing, which is Gonzales v. Trevino, 60F4906. And there Judge Ho stated that the absence of probable cause is not necessary to sustain a First Amendment retaliatory arrest claim. And Judge Ho emphasized the importance of the First Amendment in that case. In quoting, Lawrence Silberman said that the First Amendment's guarantee of free speech is not just a legal doctrine, it represents the most fundamental value in American democracy. A national commitment to uninhibited political speech is a crucial aspect of the country's culture. Mr. Grimes? Yes. Are you conceding that there was probable cause and moving on to why that doesn't matter in this case? No. Okay. No. So what's your argument for why there wasn't a probable cause? Our argument with respect to what, first of all, it's not central to our argument that there is no probable cause. With particular respect to retaliatory search warrant case, you assume probable cause because a magistrate has issued a warrant finding probable cause. But our argument with respect to that point, Judge Adias, and that's my fourth point, is that this search warrant, these two search warrants were issued by a magistrate judge in Virginia. In our view, which does not have to be a lawyer in Virginia, I don't know whether you're aware of that or not, a magistrate judge in Virginia is not like a magistrate judge in federal court. I'm not sure that we make those kinds of distinctions in the law, right? So why does that matter? I'm not sure that it does. I simply note it. I simply note it. Well, you're noting it for a reason, I guess, because you think it matters, but it doesn't. Well, I agree with you that it doesn't matter. So I disregard what I've just said with respect to that particular point. But the question is why is there no probable cause? And in our view, any magistrate worth his salt who had, with the First Amendment firmly in mind, who had read that affidavit and seen what it says, and what it says is that part of the reason that this warrant is being, search warrants are being issued, incidentally, this is a novel case as best I can tell, and Judge Dillon found that below. This issue is novel with respect to retaliatory search warrants. But Bocock's own admission, Joe Stanley has made several posts showing his disdain, that's the word, his disdain for the government and the Rocky Mount Police Department. But why do we think that's retaliatory as opposed to like the showing of malice that's sort of required to violate this statute, right? You can't accidentally do it, right? So they're trying to show that this is like an intentional action. They didn't go in and like stumble across the video, but he's doing this with purpose, with intent. And so I read that as like helping to establish probable cause, not undermining it in any way. Well, I submit that people could view that differently, Judge Richardson and Barron. But you understand, if people could view that differently, then we're going to defer to the magistrate judge, right, who was on the ground, who was able to make that decision. I fully agree you might want to read it your way. I don't frankly read it that way, but that's plausible maybe. But we've got a magistrate judge who's a neutral decision maker who read it to establish probable cause. And one of the things you've got to show is a mens rea. And that evidence like plainly goes to the mens rea with respect to the videos. Let's assume probable cause then. Let's assume probable cause because it's not essential to your finding here. But I take your point. Well taken. But let's just assume there is probable cause. We still have objective evidence. The word disdain, in my view, can only be read one way, but you may read it a different way. And I get that. But we have Bocock's own admissions that Joe Stanley we're doing this because Joe Stanley has made posts on Facebook expressing disdain for the town of Rocky Mount Police Department and the government. In our view, this is quintessential objective evidence. But we have a second piece. The police department here did not search its own computers for evidence of any crime. They did not search their own computers to see whether they were used to access or harvest or send the video. Discovery is required to determine exactly what was. Let me understand. Under the narrow exception that we talk about under NIBIS is that you were arrested when other similarly situated individuals were not. None of this goes to that question. That's the narrow exception that exists in those cases. What's irrelevant, the court seems to say quite clearly, is even objective evidence showing that the officer was motivated by comments showing disdain. That's what NIBIS says is irrelevant. What you need is objective evidence. This is what Gonzalez gets at, too, is that there are other people, other similarly situated folks, were not getting arrested and you were. Or in this instance, were not getting searched and you were. The type of evidence you're talking about under this narrow exception seems like fundamentally mistaken. Help me understand why I'm misunderstanding you. That's exactly why Gonzalez was reversed, Your Honor. No, no. Gonzalez was reversed because you don't have to show a comparator. Right. But it obviously focused on this same question that you were arrested in that instance when others were not. Right. And so what the court said there is the fact that there was nobody else arrested for this offense suffices. You don't need a comparator. That's what Gonzalez tells us. That makes total sense to me. But it doesn't say that we're now looking at objective evidence of the subjective motivations of a given officer. That's precisely what the court rejected. You seem like to have this case exactly backwards. Well, I would disagree. And as I read Gonzalez, there was no objective evidence in that case. The objective evidence there was that nobody else had been arrested for that offense. That's what the objective evidence was. But you have to look at what Sylvia and Gonzalez. But that is objective evidence, right? You agree. That's objective evidence. That would be objective evidence. And that is objective evidence that similarly situated people were not being arrested in the manner in which that individual was. In that case, what Sylvia Gonzalez did, allegedly, is she got elected to city council. She circulated a petition to remove the administrator. And during some meeting, allegedly, the petition wound up among her papers as she left the town hall. That's why she was arrested there. And so that was surregenerous. And the Supreme Court said that in that case, she did not have to show any comparative evidence. They did not reach the second question, the question I have posed here to you, which is raised by Judge Ho in his opinion below in Gonzalez, and which is the novel question, the novel question recognized by Judge Dillon. And that is whether a plaintiff must plead and prove the absence of probable cause in a case such as this, a retaliatory search warrant case. I've only found... Were there motions made to quash the search warrants for lack of probable cause? Yes. And that were litigated and were denied. And they went to appellate courts in Virginia. Yes. And were upheld. That's why we're here, is be upheld. What's the effect of these rulings by the Virginia appeals court? The effect of those rulings is to show that the plaintiff had no relief in state court because there was no criminal action pending. She could not... Mr. Stanley could not suppress the search warrants there because there's no criminal action pending. His only relief is via 1983 in the Fourth Amendment and the First Amendment in district court. That's his only relief. That's the outcome of what happened there. There was no criminal prosecution here. As you've noted, Judge King, the specially appointed neighboring prosecuting attorney, Brian Haskins, in Pennsylvania County, which is one county east of Franklin County, said that there's no crime here. There's no malice. There's insufficient evidence of malice. And he had the very document that you've referred to, Judge Richardson, and this is what Brian Haskins said. I'm of the opinion there is not... You don't think that you're prohibited from getting a search warrant or that we find a search warrant to be invalid because a prosecutor later, in the exercise of their broad prosecutorial discretion, decides not to bring a charge based on the evidence that is uncovered by the search warrant. Right? I mean, that kind of hindsight is not, like, useful at all, which strikes me.  That might... You know, Haskins might have done exactly the right thing. He had broad prosecutorial authority. But that doesn't mean his decision to not prosecute, because he did not think there was sufficient evidence to convict, tells us anything about whether there was probable cause for the search warrant. Right? Point well taken. Point well taken with respect to Haskins' decision not to prosecute or finding that there's no probable cause to prosecute. Understood. Understood. But I still think that here, that we have the type of objective evidence. Now, you are reading the word disdain to support motive, to support motive under the criminal trespass statute, which is not far removed, I think, from your jaywalking cases. And that term comes up in a lot of these cases. A lot, because jaywalking requires, like, a malicious motive. No, no, no, no. It's that it's something that's committed every day, every day by people and is not prosecuted. So computer hacking, just your point is that computer hacking is committed every day, and so I guess I'm not sure I'm following. Where is the evidence? There's no evidence of computer trespass. There's no evidence. They ask you to infer that a computer was used to harvest, but there's no evidence of that. It could be very easy simply... You think they got it off of a Betamax tape? Like, you think they broke in and took a Betamax? Like, where do they think they got the video from if not a computer? Matt? Where do they think they got... Where do you think it came from? You're saying there's no evidence that it was a computer. Like, where do you think... I mean, have you seen a video on a Betamax recently? Like, when's the last time you saw security camera footage that wasn't stored on a computer? It could be a SIMS card that you simply remove from a camera. But this is why discovery is required. Discovery is required to determine how that was accessed. I'm not sure why that would be necessary, assuming that that makes sense, that there are other logical possibilities. This is a question of probable cause, right? And the fact that the officers started their investigation by looking at your client's computer, among the other possibilities, Betamax. You may be dating yourself. I think VHS came after Betamax. It was in digital. But, you know, this is not a question of there was a certainty that this evidence would be found there. It's just one among many possibilities. So what is wrong with the investigating officer beginning with the computer? I think the investigating officer should have begun with the computer, but should not have looked at Joseph Stanley's computer. They didn't look at Joseph's. They seized his Facebook and Google accounts. But the same thing, I suppose, looking at evidence generated from a computer. But they should have looked at their own computers, in our view. The fact they didn't, in our view, is objective evidence. What's the best case that you have that says probable cause is lacking when a defense lawyer thinks of a better investigative technique? A better investigative technique? When you think there was something better that could have been done, have you ever seen a case where we invalidated a police officer's search warrant? Because after the fact, you hypothesize a better investigative technique? No, no, no. I've never seen a case like this one. I've never seen a case where a search warrant says that so-and-so has expressed disdain for the government, and therefore were issuing the search warrant to seize all of his Facebook accounts and Google accounts, which, just as in Gonzales, was for the specific purpose of chilling his exercise of free speech. Just as in Gonzales. As Sylvia Gonzales wrote, I will never again run for public office because of what they did to me when I circulated that petition. That's the whole goal here. It's First Amendment chilling. That's the goal of the government in this case, and it worked. It worked. It's quiet. It's Joe Stanley as well. So it served its purpose. Now, you could say, Judge Richardson, well, that supports the malice component, which was, in my view, invalidated by Brian Haskins, the prosecutor. But it could also be that we're going after this material because Joe Stanley has expressed disdain for the government. That's why we're seizing his Facebook and Google accounts. I see that my time is up. I've reserved five minutes. I'll address any additional questions on rebuttal. Thank you, Mr. Grimes. Mr. Bryant. Good morning, and may it please the Court. I'm Graham Bryant, Principal Deputy Solicitor General of Virginia, on behalf of Stanley Bocock or, excuse me, Officer Bocock, Special Agent Bocock. With me at council table is Deputy Solicitor General Meredith Baker. After Joseph Stanley posted to his Facebook page that they were going after Joe Stanley's Facebook account, that there would be a reasonable chance that evidence investigating the crime of computer trespass would be found on a search of his Facebook and Google accounts. That probable cause resolves this case, and it's well established that the existence of probable cause defeats a Fourth Amendment unreasonable search claim. Don't you mean to also include the caveat from Gonzalez and Nieves that there's an exception to that? I mean, that's a general rule, but you're not trying to suggest that that exception doesn't apply or is not potentially applicable? Of course. In First Amendment retaliatory claims, absolutely the Supreme Court has held in Nieves and Gonzalez that there is this narrow exception for objective evidence. Can you help us understand? I think your colleague and I have different understandings of it, but from your perspective, can you help us understand what that means when they say objective evidence? What is the standard? What type of evidence is required? Objective evidence of what? It's objective evidence that in the retaliatory arrest context, which critically is the only context where the Supreme Court has ever applied this exception, that the particular person bringing the retaliation claim was arrested and thus retaliated against in a context where police have not arrested other individuals. Gonzalez makes clear that unlike the Fifth Circuit's holding below in Gonzalez, you don't need someone by name, birthday, and Social Security number. You don't need specific ascertainable comparators. What you do need is some form of objective evidence suggesting that other people in that situation, maybe not specific comparators, but a class of comparators like the survey in Gonzalez that showed that there the Texas statute had never been applied for a misplaced government record. It was always for things like falsifying IDs or, you know, cheating on a government exam. Never the type of thing where it was used against Ms. Gonzalez. So this case was dismissed at what stage, 12B6? 12B6, yes, Justice. So how is a plaintiff supposed to get that evidence if he or she can't get discovery? I think Gonzalez is instructive there. There, I believe she either attained an affidavit or conducted research on, for that county, how many times has this statute been used and how has it been used, publicly available information, and alleged that. That was part of the affirmative allegations. Discovery is not necessary to get this type of broad objective evidence. And I think when we look here at the type of objective evidence that Mr. Stanley is reporting to talk about here, the sole objective evidence he points to is the line in the search warrants about disdain for government, which goes to the malice element. I believe he mentioned that. I'm sorry to interrupt, but, you know, Gonzalez and Nieves, I think we're both talking about retaliatory arrests. Is that same kind of public evidence available with respect to searches? I think it will depend on the facts of the particular type of claim at issue. Different types of arrests have different contexts. I mean, for instance, in Lausman, that was an official policy kind of situation. The court made a much narrower rule or a different rule than it did in a more typical case like Nieves and then Gonzalez. So for these sorts of cases, you need to look at the specific facts that are there. And it's hard to make a broad statement about what kinds of objective evidence will be there. But I think the point that retaliatory search warrant claims are distinct in kind from retaliatory arrest claims is critical here. The Supreme Court never applied this sort of Nieves exception in the retaliatory prosecution context. And retaliatory prosecution is a bit more akin to what we have here in a retaliatory search warrant context. In both contexts, there is a government actor other than the officer who's the defendant in these cases that provides a check. For the prosecutor in retaliatory prosecution claims, we have the presumption of regularity for a prosecutor. For here, we have magistrate judges to whom courts owe deference and probable cause determinations. And it's well established that line police officers— Are you suggesting that this Nieves-Gonzalez carveout should not apply because we've got this sort of double layer, right, officer and magistrate, the same way we might have officer and prosecutor? I mean, I understand that argument. I didn't understand you to be making that argument. You might be. That's what I'm trying to get at. Do you think the Nieves exception for objective evidence that others are not arrested for that type of action does not apply in the search warrant context? I think it's not at all clear from the case law we have out there that it would. I'm asking what your position is. I understand it is not clear from the case law. What I'm asking is what is the Commonwealth's position on whether this exception applies when we have this double layer, right, both in the prosecution and in the search warrant context? Yes, the Nieves exception does not apply in this context. That's been our affirmative argument on brief, given how different in kind this situation is from the retaliatory arrest context, which is the only context where the Supreme Court has ever identified that sort of exception. So in other words, it's sort of like Hartman, right? Exactly. And so Nieves carves out an exception to Hartman because there's a single layer of process, but where we've got a double layer, officer, prosecutor, officer, magistrate, that this sort of exception, the Nieves exception, simply doesn't apply at all. Yes, Judge Richardson, that's certainly the view. Sorry to interrupt again, but we don't need to decide that in this case if we find, we agree with you, that there simply is no evidence of a sufficient comparator to even consider that issue. Absolutely, Judge Diaz. Even assuming without deciding that such an exception would apply here, there's just no evidence. As the judge below pointed out, Mr. Stanley never even invoked this exception in his complaint. He didn't try to invoke it. He points only to the disdain comment in the search warrants, which goes to malice. He did argue here that the police did not search the police computer. And that's simply not an allegation in the complaint. That's an argument that exceeds the allegations in the complaint. As the district judge pointed out in the motion to dismiss opinion, the complaint says only that the police could have searched that computer, not that they did, not that they did not. And an argument certainly can't exceed that. That leaves really the only objective evidence argument here, the statement that's in the warrants. Why do you fight, I understand. Why do you care about that? Why do you choose to raise that? Because it can't, I don't understand how that could possibly be relevant, right? The fact that you didn't take some investigative step, but you did take this one, I understand you want to fight on everything, but like why does that possibly matter? If I'm trying to think about the case and what matters, why does it possibly matter whether you did or did not search the government computer? It does not because there's nothing that says the police must investigate in a particular way. But even if the court were to consider that, it's just simply not enough. So no matter what the court decides on the Nieves exception, it fails here, whether the exception does not apply at all in this context, which I believe is the correct threshold ruling, or that in this specific case there simply aren't sufficient allegations to meet that objective exception. And more broadly, the notion that probable cause does in fact defeat a retaliatory search warrant claim I think follows cleanly from the Supreme Court's precedence in this area, in Hartman and malicious prosecution, and then in Nieves and Gonzalez for retaliatory arrest. For all of those cases, there is… Either Nieves or Gonzalez sort of really rely upon this single layer versus the multi-layer review to create this exception. I understand you could read this into those cases, but what in either Gonzalez or Nieves would you point me to to suggest that the Nieves exception is limited to cases that don't involve double layers? I would point the court to the fact that certainly the Supreme Court has never extended it to any other context than retaliatory arrest. And retaliatory arrest simply presents unique circumstances that aren't present in these others. I understand all that, but what I'm asking is, is there anything in those cases, in the language of those cases, not the implication of those cases, but is there anything in the language that suggests that Nieves exception really turns on single versus double layer as opposed to sort of trying to read that between the lines, I guess is what I'm really asking. There's no obvious objective statement that this only applies in this context. I think that's very true. But, of course, the Supreme Court, like all appellate courts, typically doesn't decide more than it needs to decide in a given context. So I'm not sure that we would expect to see a statement like that either if the court did intend to so limit it. Can I ask you a question about sort of the atmospherics of this case? You know, Mr. Stanley obviously had a lot of concerns about the workings of this small town government. And it wasn't isolated to the police department. It appears he had a broad range of grievances. And I'm not opining on whether or not they were legitimate. But, you know, that kind of forms the backdrop to this whole issue regarding the search and Mr. Grimes' complaint in this case that Mr. Grimes filed by the local police because of who he was and what he did and that. So it's different than a case where, just as an example, you've got a teenager who might have infiltrated the video, might have posted the video, and then he files a complaint. And there's just no evidence of any retaliatory motive in that context. But here you've got at least this atmospheric of Mr. Stanley being a gadfly or pain in the rear end, for lack of a better description. He would say he's exercising vigorously his rights as a citizen. Is that enough to suggest that the case should go forward, just the background atmospherics? Not at all, Judge Diaz. I think really across the board in these First Amendment retaliation cases, most of them do involve a situation where you have a community activist, someone who is actively and correctly exercising their First Amendment rights. But then also you'll have the competing influence of a genuine criminal investigation. And that's why the common thread throughout all of these First Amendment retaliation cases that touch in the criminal context is this intractable causation problem, which is what the Supreme Court has consistently pointed to the need for this no probable cause element. For these sorts of cases, you have to show that retaliatory animus didn't simply exist but was the but-for cause of the challenged government action. But in the criminal context, protected First Amendment speech, as the court has recognized, is often a legitimate consideration in developing a criminal case and doing a criminal investigation. So then you have the question. Do you read the line in the search warrant? Let me rephrase it. How do you read the line and what relevance do you ascribe to the line that he had ill will against the city? Why was that included in the search warrant? What was its relevance to the search warrant? Judge Richardson, that goes directly to an element of the Virginia crime, 182152.4, which the first lines of that statute are, it is unlawful for any person with malicious intent to go on and complete the other elements of a criminal computer trespass. So that malicious intent is an affirmative element. And here, the police are investigating to figure out who took this video from a police computer system and how it ultimately ended up on Stanley's Facebook page. It's no sign that they were ever investigating Stanley as the person who snuck into the police department and took it. What we have is a definite endpoint. This video was posted on a page. And the fact that that page belonged to someone who was known to be vocal in comments suggests, or at least leads the reasonable inference at the probable cause stage, that the person who shared it with him did so with the design that it wouldn't be hidden under a bushel, but instead shared publicly and detrimentally to the police department. That establishes the malice element at the probable cause standard, certainly. And that's the reason this line appears in both of the search warrants. The reason the probable cause evidence is so valuable in these First Amendment retaliation claims in the criminal context is that, as the Court has recognized, probable cause provides a distinct body of evidence. It's going to exist in all of these criminal context cases, whether it's prosecution, arrest, or here, search warrant, that will tend to show, was this purely retaliation as the but-for cause, or was this an actual legitimate government investigation? And if probable cause exists, that shows that, regardless of the animus, the challenged government action would have taken place anyway. But if there's no probable cause, that's highly suggestive that the action was taken specifically to retaliate, and thus was the but-for cause. And then here, I think at the fairly deferential probable cause stage, both magistrates, two separate distinct magistrates, this just wasn't a single magistrate, made independent probable cause determinations based on the facts here, because it is very reasonable to think that evidence of a computer trespass claim would be found by searching these electronic accounts, the Facebook account, and then once that actually uncovered useful information, the Gmail address, the Google account, that would help establish that chain of where this video came from, who provided it to him, that would further the investigation into criminal trespass. This is the classic role of search warrants. And the rule that my friend on the other side is proposing would upend a lot of the reasons that the Supreme Court has articulated that we need this no probable cause element. It's easy to make allegations about an officer's subjective state of mind. And as Judge Diaz has indicated, it's really tempting to just dig into the discovery and try to poke around and see what you can find. But these are police officers and investigators that are doing their job. That's why our system provides this deference. We don't want to make these officers afraid to do fundamental investigation and have the criminal justice system grind to a halt. I think the Supreme Court in Nieves speaks a lot about this. It says policing events like an unruly protest could make just any incorrect turn of phrase or anything turn into years of federal civil rights litigation. And as a result, it would dampen the ardor of police. That's something the Supreme Court has said that we should not do. The rules apply on all floors here. And just briefly in my last few minutes, I'd like to point to qualified immunity because even if this constitutional issue strikes the court as tricky or something the court doesn't want to go into, qualified immunity manifestly applies and bars both of these claims. The very fact that the Supreme Court and this court have never addressed the questions that we have here, does the Nieves exception apply, is no probable cause an affirmative element of a retaliatory search claim, that manifestly demonstrates that that law is not clearly established. So Officer Bocock's conduct, at a minimum, is protected by qualified immunity. Unless the court has any further questions, I'd ask that this court affirm the district court's denial of or grant of the motion to dismiss and denial of leave to arrest. So can I ask you about this latter issue regarding qualified immunity and the retaliatory, the retaliation claim? It seems a bit odd to say that an officer who is pursuing a search warrant and executing a search warrant but has a retaliatory motive would be immune from a civil lawsuit if he, simply because he didn't know that there would be an exception to the issue of retaliation. If he had retaliation on his mind, why would that not be a problem in terms of qualified immunity? For one, there's no case on point that deals with this context and suggests that even if protected speech was part of a criminal investigation, that a validly issued search warrant was not, it would be a constitutional violation to execute a validly issued search warrant. And to your point about what if there is, in fact, a subjective motive of retaliation, the Supreme Court has made clear that we never look to an individual officer's specific subjective intent. And even in these retaliation claims, the court says it might be distasteful, it might be dishonorable, even if there is, in fact, a retaliatory motive somewhere in there, as long as the criminal investigation is legitimate, there is probable cause. And this would have gone forth such that the retaliation is not the but-for cause of the conduct. The conduct does not violate the First Amendment. In light of that, there just simply is nothing that shows that the conduct at issue here was so clearly established that what this officer did, which was executing lawfully issued search warrants, would constitute constitutional violations. Nothing clearly establishes that, and qualified immunity manifestly protects his behavior. All right. Thank you. Thank you. I ask that you affirm. I think, Judge Diaz, that you've hit the nail on the head. Joe Stanley was singled out because he was a thorn in the side or a pain in the butt or whatever words we want to use of the town of Rocky Mount Police Department. He was never prosecuted. No one was ever prosecuted. No one will ever be prosecuted. They wanted his Facebook and Google records to know who he was talking to, what he was talking about, whether there was a group of people who were expressing disdain for the government, and it worked. It worked. To address your question, Judge Richardson, objective evidence of what? It's objective evidence of ulterior motive. That's what the court's looking for. This is what Justice Gorsuch said in Gonzales where the process was lawful. The point is the process, yes, it was supported and it was properly done, that it was supported by probable cause. The magistrate here signed off on it, but it was being done for an ulterior purpose, and I think that's the allegation here. That's the allegation. What are you quoting there? It's on our opening brief, Judge Richardson, at page 15. It's the oral argument, right? It is the transcript of the oral argument. So what you're asking is instead of reading Gonzales, you want us to read Justice Gorsuch's question in oral argument? I am not saying that the transcript or the oral argument. Does it supersede Gonzales in Memphis? No, no, no. But the point is instructive, I think. The point he was trying to make, I think, is instructive, and that's the only reason that I offer it. We look for some ulterior motive, and I submit we have that here. My colleague sets up an impossible – first of all, they say probable cause. Is there anything from Neves or Gonzales that you want to cite, any part of those opinions that you want to cite for this proposition that you just look generally for an ulterior motive? Because I read them the opposite way, and so I guess maybe help me understand where you want me to look in Gonzales or Neves to come up with this idea that we just look for some ulterior motive, the existence of some ulterior motive. Under Gonzales and Neves, what my opponent says is that you look for objective evidence of comparators. That's not in either opinion. That's simply not there. And that's why we need discovery. They say you need objective evidence of comparators, but you can't get any discovery. That's why we need discovery, and again, we're here on 12b-6, not Rule 56 or trial or verdict or some such. And also take issue with my colleague's argument that we don't want to dampen the ardor of the police. Maybe we do sometimes. And that's why we're here, because here they went after Joe Stanley to silence him, and it worked. So we need discovery as to certain issues, and I thank you for your time here this morning. I'll answer any additional questions that you may have. Thank you, Mr. Grimes. Thank you. I want to thank both counsel for their able arguments this morning. We'll come down and greet you and then move on to our second case.
judges: Albert Diaz, Robert B. King, Julius N. Richardson